IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

THE BANK OF NEW YORK MELLON §
TRUST COMPANY, N.A., §
§                    SA-21-CV-01296-JKP
*Plaintiff*, §
§
vs. §
§
CANTON II, INC., §
§
*Defendant.* §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Jason K. Pulliam:**

This Report and Recommendation concerns the Receiver's Motion for Entry of Order: (I) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing and Approving the Receiver's Entry Into and Performance Under the Sale Agreements, and (III) Granting Related Relief [#36]. This case was referred for all non-dispositive pretrial proceedings pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#13]. The District Court also separately referred the Receiver's motion for a report and recommendation [#46]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the Receiver's motion be **granted** and the District Court **enter** the Receiver's proposed Order [#36-6].

### I.  Background

This is a breach of contract action arising out of a Loan Agreement between Plaintiff Bank of New York Mellon Trust Company, as trustee ("the Trustee"), and Defendant Canton II,

Inc. ("Defendant").  Plaintiff's Complaint alleges that on or about December 1, 2011, the Trustee and Bexar County Housing Finance Corporation ("BCHFC") executed an agreement pursuant to which $27,765,000 in bonds were issued to finance Defendant's purchase and renovation of the Inn at Los Patios, a senior living housing project ("the Facility").  (Compl. [#1], at ¶ 8.)  In connection with the issuance of the bonds, the Trustee, BCHFC, and Defendant entered into a Loan Agreement, under which BCHFC loaned the proceeds of the Bonds to Defendant.  (*Id.*)  The Trustee filed this action against Defendant, alleging default of Defendant's obligations under the governing Bond Documents for failure to make loan payments and to deposit project revenues with the Trustee.  (*Id.* at ¶ 14.)

Soon after the filing of suit and in light of Defendant's uncontested default, the Trustee moved for the appointment of a receiver to take exclusive power and control over the assets, management, operations, maintenance, leasing, repair, and preservation of the Facility.  The Court granted the motion on January 17, 2022, appointing Suzanne Koenig as Receiver and directing the filing of a monthly report with the Court on the status of the receivership.  (Order [#7].)  The Receiver filed her monthly reports from February to October 2022, as directed, informing the Court of the steps taken to market and sell the Facility and summarizing the accounting of rents and revenues and expenses incurred with respect to the receivership.  On October 3, 2022, the Receiver filed the motion currently before the Court for an order authorizing sale of the Facility and other related relief.

The undersigned held a hearing on the Receiver's motion on November 15, 2022, at which counsel for the Trustee, Defendant, and the Receiver appeared via videoconference.  The Receiver herself was also in attendance.  At the hearing, counsel for Receiver recounted the steps

taken to market and sell the Facility.  Counsel for the Trustee and Defendant indicated they have no objection to the Receiver's proposed Order authorizing the sale.

## II.  Analysis

This Court's authority to impose and administer this receivership originates from its inherent powers as a court of equity.  *See United States v. Durham*, 86 F.3d 70, 72 (5th Cir. 1996).  A federal court exercises broad powers and wide discretion in crafting relief in a receivership proceeding.  *United States v. Garcia*, 474 F.2d 1202, 1205–06 (5th Cir. 1973) (reviewing the district court's decision under an abuse of discretion standard).  This Court's broad authority over a receivership estate includes the equitable power to approve the sale of property free and clear of all liens, claims, interests, and encumbrances.  *See Mellen v. Moline Malleable Iron Works*, 131 U.S. 352, 357 (1889) ("[T]he removal of alleged liens or incumbrances upon property, the closing up of the affairs of insolvent corporations, and the administration and distribution of trust funds are subjects over which courts of equity have general jurisdiction.").

Under 28 U.S.C. § 2001(a), the Court may authorize the sale of real property in a receivership as follows:

> Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs.  Such sale shall be upon such terms and conditions as the court directs.
>
> Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders

the sale of the property or one or more parcels thereof in one or more ancillary districts.

28 U.S.C. § 2001(a). A movant must publish notice of the public sale "once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated." 28 U.S.C. 2002. With respect to personal property of a receivership, "[a]ny personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, unless the court orders otherwise." 28 U.S.C. § 2004. Consistent with these statutory provisions, the Receiver Order entered into by this Court on January 17, 2022, expressly grants the Receiver the authority and power "to market the Property for sale or lease" and "to retain a real estate broker for such purposes," provided that the sale is subject to "approval from this Court." (Receiver Order [#7], at ¶ 12.)

The evidentiary record before the Court establishes sound bases for the Court's approval of the proposed sale. The record demonstrates that the Receiver engaged in a multi-month, widespread marketing effort and sale process resulting in a $21 million purchase price for the Facility and all receivership assets. (Firestone Decl. [#36-3], at ¶¶ 4–10.) The Receiver engaged Blueprint Healthcare Real Estate Advisors, LLC ("Blueprint"), and Michelle Brecker, a licensed real estate broker in the State of Texas ("the Broker"), to provide brokerage services and oversee the marketing and sale process. (*Id.* at ¶ 4.) Blueprint has significant experience with respect to marketing senior living facilities for sale and has been retained in recent years in over 555 seniors housing and care sale transactions. (*Id.* at ¶ 3.)

Blueprint solicited 65 potential buyers, 19 of which indicated a level of interest as a potential buyer and requested additional information. (*Id.* at ¶ 7.) Blueprint received eight letters of intent from potential buyers; five of these prospective buyers were offered the

4

opportunity to conduct an on-site tour of the Property and toured the Property on July 6 and 12, 2022.  (*Id.* at ¶ 8.)  The Receiver received final bids from the top five prospective buyers, and following consultation with the Trustee and Broker, executed a letter of intent with EMRES III San Antonio, LLC, on August 15, 2022 ("the Buyer").  (*Id.* at ¶ 9.)

The Buyer agreed to purchase substantially all of the receivership's assets for the aggregate amount of $21 million.  (Koenig Decl. [#36-4], at ¶ 9.)  The Receiver, on behalf of Defendant, and the Buyer entered into the Real Estate Purchase Agreement on September 29, 2022. (Real Estate Purchase Agreement [#36-1].)  The Receiver and the Buyer also entered into an Operations Transfer Agreement to allow for an orderly transition of the Facility, without interruption in the business of operations and ongoing resident care.   (Operations Transfer Agreement [#36-2].)

The Receiver has concluded that the execution of the Sale Agreements and her decision to sell the Facility and all receivership assets is a sound exercise of her business judgment. (Koenig Decl. [#36-4], at ¶¶ 6–8.)  The Receiver believes that the bid submitted by the Buyer constitutes the highest or otherwise best offer for the Sale Assets.  (*Id.* at ¶ 6.)  On top of offering the highest purchase price, the Buyer conducted extensive diligence regarding the Facility over several months and had no financing or diligence contingencies.  (*Id.*)  The Receiver consulted with the Trustee throughout the sale and marketing process and negotiated the Sale Agreements with the Buyer in good faith, without collusion, over multiple weeks, and at arm's-length.  (*Id.* at ¶¶ 11–12.)

The Trustee has a valid, perfected lien against the Sale Assets.  (*Id.* at ¶ 13.)  The Bondholders are owed in the aggregate an excess of $30 million, and the Purchase Price for the Sale Assets, less any purchase price adjustments, closing costs, and administrative costs of this

receivership, will not repay the Bonds in full.  (*Id.*)  The Loan Agreement underlying this action provides that if a receiver is appointed for the Defendant, the Trustee is permitted to collect proceeds from any sale in the receivership "and to distribute such amounts as provided in the Indenture after the deduction of its charges and expenses.  Any receiver . . . is [] authorized to make such payments to the Trustee."  (Loan Agreement [#2-1], at § 7.3).  The Sale proceeds remitted to the Trustee will be net of any purchase price adjustments, closing costs, unpaid receivership expenses, and an estimated amount to cover the ongoing cost of this receivership post-closing of the Sale (including any post-closing amounts that could reasonably be expected to be owed by Seller to the Buyer under the terms of the Sale Agreements).  (Mtn. [#36], at ¶ 30.) The Trustee and the Receiver are in discussions concerning an agreed upon amount of sale proceeds to remain in the receivership estate to ensure that all of the administrative costs of the receivership are paid in full, including, without limitation, any post-closing amounts that could reasonably be expected to be owed by the Seller to the Buyer under the terms of the Sale Agreements, trade payables, payroll amounts, and the fees and expenses of the Receiver and her professionals (collectively, the "Receivership Administrative Costs").  (*Id.*)

Additionally, notice of the sale was published in accordance with 28 U.S.C. § 2002, and the Receiver filed with the Court a certificate of publication, attesting that the sale was published in the San Antonio Express-News, a newspaper regularly issued and of general circulation in the county where the Facility is located.  (Certificate of Publication [#41].)  Notice of the Receiver's motion has also been given to BCHFC, the Buyer, the Texas Secretary of State, the Centers for Medicare and Medicaid, Texas Health and Human Services, and any party that has filed an appearance.  (*See* Form of Notice [#36-5].)  As of the date of the hearing, counsel for the Receiver had not received any answers, objections, or other responsive pleadings to the Sale

Motion.  (Notice of No Objection [#42].)  Accordingly, the notice requirements of 28 U.S.C. § 2002 have been satisfied.

28 U.S.C. § 2001(a) imposes certain technical prerequisites prior to Court approval of a sale, such as a requirement that the sale be conducted publicly at a courthouse.  The Receiver asks the Court to relieve her of the obligation to comply with this and other technical requirements.  Courts frequently waive strict compliance with 28 U.S.C. § 2001(a), which contains procedures that might impede rather than facilitate the sale of receivership assets.  *See, e.g.*, *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14 CV 7581, 2015 WL 5180678, at *7 (N.D. Ill. Sept. 4, 2015) (approving receiver's sale that did not strictly comply with sections 2001(a) because the "archaic procedures" in the statutes "would have hampered the sales").

Further, the Trustee does not oppose the Receiver seeking to waive strict compliance with 28 U.S.C. § 2001(a), and the Defendant, through the Receiver Order, has consented to the Sale. Under the Receiver Order, the Defendant agreed "to any sale that may be approved by the Trustee and waives any right to object to any such sale."  (Receiver Order [#7], at ¶ 12).  Courts have previously found that parties to a receivership may waive the requirements under 28 U.S.C. § 2001 by agreement.  *See, e.g.*, *Sec. & Exch. Comm'n v. EB5 Asset Manager, LLC*, No. 15-62323-CIV, 2016 WL 7508252, at *2 (S.D. Fla. Mar. 25, 2016).   If the circumstances are appropriate, this Court may also waive the procedures set forth in 28 U.S.C. § 2001 for a sale of personalty.  *See e.g.*, *Fed. Trade Comm'n v. Consumer Def., LLC*, No. 2:18-CV-30 JCM (PAL), 2019 WL 266287, at *4 (D. Nev. Jan. 18, 2019) (providing that 28 U.S.C. § 2004 allows courts to authorize sale of personal property without three disinterested appraisals).  The undersigned agrees that strict compliance with these requirements will only serve to increase expenses of the receivership estate to the detriment of the Bondholders and duplicate the efforts of Blueprint.

In light of the foregoing, the Court finds that the Sale, on the terms set forth in the Sale Agreements, is fair to all parties with an interest in the property, is reasonable under the circumstances, and will maximize the return from the property to the receivership estate, taking into account the potential cost of continuing to hold and operate the Sale Assets.

## III.  Conclusion and Recommendation

Having considered the Receiver's motion, the lack of opposition to the motion and proposed sale, the representations of the Receiver and the parties' at the hearing, and the governing law, the undersigned recommends that the Receiver's Motion for Entry of Order: (I) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing and Approving the Receiver's Entry Into and Performance Under the Sale Agreements, and (III) Granting Related Relief [#36] be **GRANTED**.  The undersigned further recommends that the District Court enter the Receiver's proposed Order authorizing the sale [#36-6].

## IV.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider

frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of November, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE